**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MASHOUNA ANDRADE, an individual; D.A., a minor, by and through her guardian ad litem, Raynisha Hensel,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 19-cv-00930-BAS-WVG<br><br>**ORDER GRANTING THE GOVERNMENT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSING ACTION WITHOUT PREJUDICE**<br><br>[**ECF No. 18**] |

Before the Court is the Government's Motion for Judgment on the Pleadings and Dismissal for Lack of Subject Matter Jurisdiction ("Motion"). (ECF No. 18.) For the reasons explained below, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

    **A.    Factual Background**

Plaintiff Mashouna Andrade, a patient of San Ysidro Health, received a filling at the clinic's Chula Vista office on September 16, 2016. (First Am. Compl. ("FAC") ¶ 5, ECF No. 4.) San Ysidro Health is a federally funded health clinic in San Diego County. (FAC ¶ 5.) The filling fell out that evening, prompting Ms. Andrade to visit the clinic again for a walk-in emergency appointment the following day. (FAC ¶ 7.) Dr. Michael Rozen fixed the filling, prescribed Ms. Andrade penicillin and "Norco/acetaminophen," and discharged her the same day. (FAC ¶ 9.) After eight days, Ms. Andrade experienced pain in the same

tooth and had her son drop off the prescription at a CVS Pharmacy in San Diego on September 26, 2016. (FAC ¶ 10.)

The pharmacist at CVS called San Ysidro Health the same day to verify the prescription, but was told by a San Ysidro Health employee, identified only as "Jasmine," that Ms. Andrade was not a patient at San Ysidro Health and Dr. Rozen did not work for the clinic. (FAC ¶ 11.)

Ms. Andrade visited CVS later that day to pick up her medication with her daughter, D.A. (FAC ¶ 12.) Upon their arrival, the pharmacist called the police. (*Id.*) The police confirmed Ms. Andrade's identity with the pharmacist, who stated that Ms. Andrade had tried to "pass the forged prescription." (FAC ¶ 13.) The police "had to use force to handcuff Ms. Andrade in front of her nine-year-old daughter [D.A.]." (*Id.*)

After placing Ms. Andrade in the back of a patrol car, an officer called San Ysidro Health and an employee named Sandra informed the officer that Ms. Andrade was "not a current patient and there is no record of anyone signing a prescription for [her]." (FAC ¶ 15.) Sandra further stated that Dr Rozen, whose name was on the prescription, "has never worked for the office." (*Id.*)

Ms. Andrade was transported to police headquarters, Mirandized, and booked into Las Colinas Detention Facility on September 26, 2016. (FAC ¶ 16.) She was released after posting bond on September 27, 2016. (FAC ¶ 17.) The District Attorney for the County of San Diego filed a felony complaint against her on October 3, 2016 for obtaining a prescription by fraud/deceit and forging a prescription for a narcotic. (FAC ¶ 18.) Ms. Andrade pled not guilty on October 4, 2016. (*Id.*) The District Attorney's Office then dismissed the case at the second readiness hearing. (FAC ¶ 19.)

The FAC alleges one cause of action for negligence on behalf of Ms. Andrade and D.A. ("Plaintiffs") and alleges that Plaintiffs suffered emotional distress as a result of the incident. (FAC ¶¶ 22–31.) Ms. Andrade also seeks "special damages including medical expenses." (FAC ¶ 25.)

### B. Procedural History

Ms. Andrade filed a claim under the Federal Tort Claims Act ("FTCA") with the Department of Health and Human Services ("HHS") on behalf of herself on August 3, 2018 and on behalf of D.A. on August 20, 2018. (FAC ¶ 20.) HHS denied both claims on January 24, 2019 and informed Plaintiffs that they could file suit in federal district court within six months from the date of mailing of the determination. (FAC ¶ 21.)

On May 17, 2019, Plaintiffs timely filed the initial Complaint in this action, and Ms. Andrade moved to proceed *in forma pauperis* ("IFP"). (ECF Nos. 1, 2.) After conducting a mandatory screening, the Court granted the IFP motion and dismissed the Complaint. (ECF No. 3.) Plaintiff then filed the FAC, which is the operative pleading in this case. (ECF No. 4.) The Court thereafter appointed Raynisha Hensel as D.A.'s guardian *ad litem* and deemed the FAC sufficient to survive mandatory screening. (ECF Nos. 9, 11.) The Government was subsequently served and timely filed an Answer to the FAC on August 16, 2019. (ECF No. 15.)

On August 23, 2019, the Government filed the instant Motion for Judgment on the Pleadings, arguing that this Court lacks subject-matter jurisdiction over the claims under the FTCA. (ECF No. 18.) Plaintiffs opposed the Motion on September 9, 2019, and the Government replied on September 16, 2019. (ECF Nos. 21, 22.) Oral argument was held on February 20, 2020 and the matter was taken under submission. (ECF No. 24.)

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, and the same legal standard applies to both." *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 935 (N.D. Cal. 2019) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). Therefore, "[a] judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998).

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). It is the moving party's burden to demonstrate that both of these requirements are met. *Doleman v. Meiji Mut. Life Ins. Co*., 727 F.2d 1480, 1482 (9th Cir. 1984).

Further, pursuant to the Federal Rules of Civil Procedure, a court must dismiss an action if it lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(h)(3). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). It is the plaintiff's burden to establish the existence of subject-matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

### III. DISCUSSION

Congress enacted the FTCA "to waive immunity from tort suits involving agencies across the federal government." *Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435, 1429–40 (2019). Congress also carved out several exceptions to this waiver, including "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h). To determine whether a claim falls within an exception to the FTCA, the critical inquiry is "whether the conduct upon which the claim is based falls within the definition of a tort enumerated in § 2680(h) that was 'traditional,' 'commonly understood' or 'established' when the FTCA was enacted." *Sheehan v. United States*, 896 F.2d 1168, 1170 (9th Cir.), *amended, reh'g denied, en banc*, 917 F.2d 424 (1990); *see also Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996), *as amended* (Sept. 26, 1996) (holding that courts must "look beyond a plaintiff's classification of the cause of action to examine whether the conduct upon which the claim is based constitutes one of the torts listed").

The Government moves for judgment on the pleadings on the grounds that Plaintiff's allegations essentially state a claim for misrepresentation and are therefore exempt from the FTCA under § 2680(h). (Mot. at 3.) Plaintiffs, however, argue that their claim does not fall within the exception because the misrepresentations were not made to Plaintiffs themselves and were not made in a commercial context. (Pl.'s Opp'n to Mot. ("Opp'n") at 6–8, ECF No. 21.) The Court addresses each argument in turn below.

### A. Third-Party Reliance On Misrepresentations

Plaintiffs allege that employees of San Ysidro Health provided inaccurate information about Ms. Andrade's status as a patient and the legitimacy of her prescription to a pharmacist and a police officer, ultimately leading to her arrest. Plaintiff argues that because no misrepresentations were made to Plaintiff herself, this is not a case of misrepresentation. (Opp'n at 8.) The Government argues that the misrepresentation exception in § 2680(h) extends to those misrepresentations made to third parties as well as those made to Plaintiff. (Mot. at 5.)

In its seminal case regarding the misrepresentation exception under the FTCA, the Supreme Court held that an action alleging the Government's breach of its "duty to use due care in obtaining and communicating information upon which [the injured party] may reasonably be expected to rely in the conduct of his economic affairs" was barred by the exception. *United States v. Neustadt*, 366 U.S. 696, 706–07 (1961). However, the Supreme Court later stated that a misrepresentation action involved "the communication of misinformation on which the *recipient* relies[,]" not necessarily the plaintiff. *Block v. Neal*, 460 U.S. 289, 296 (1983).

The Ninth Circuit has since followed this more expansive interpretation of the exception, holding that the FTCA exception barred clams based on misrepresentations on which third parties have relied. *See Alexander v. United States*, 787 F.2d 1349, 1350−51 (9th Cir. 1986) (affirming dismissal under § 2680(h) of a claim that the FBI sent an allegedly inaccurate "rap sheet" to plaintiff's employer, resulting in plaintiff's termination); *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) (affirming dismissal under

§ 2680(h) of an allegation that government officials provided inaccurate criminal history details to state welfare department responsible for licensing foster parent who sexually abused plaintiff, his foster child); *see also Rich Prod. Corp. v. United States*, 804 F. Supp. 1270, 1274 (E.D. Cal. 1992) (stating that a third-party purchaser's reliance on inaccurate information in government-issued certificates, giving rise to a breach of contract suit against the plaintiff, was sufficient to invoke the exception).

Thus, under the law of this circuit, § 2680(h) precludes claims where third parties received and relied upon misrepresentations, resulting in the alleged injury to the plaintiff. As such, the fact that misinformation in this case was conveyed to a CVS pharmacist and law enforcement officer, rather than to Plaintiff, does not remove Plaintiffs' allegations from the scope of the exception in § 2680(h).

**B.     Commercial Decisions**

Plaintiffs also argue that the misrepresentation exception in § 2680(h) does not apply to their claim because misrepresentation must involve injuries "resulting from commercial decisions based upon false or inadequate information provided by the government." (Opp'n at 6.)

The Supreme Court and Ninth Circuit have held that the tort of misrepresentation is "confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings." *Neustadt*, 366 U.S. at 711 n.26 (citing W. Prosser, Torts, § 85, "Remedies for Misrepresentation," at 702–03 (1941 ed.) and 2 F. Harper & F. James, Torts, § 29.13, at 1655 (1956)); *see also Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990). As such, the misrepresentation exception within the meaning of § 2680(h) has generally been applied in commercial contexts. *See Green v. United States*, 629 F.2d 581, 584 (9th Cir. 1980) ("[T]he applicability of the exception depends upon the commercial setting within which the economic loss arose."); *Guild v. United States*, 685 F.2d 324, 325 (9th Cir. 1982) (the FTCA does not impose liability where "injuries result from commercial decisions made in reliance on government misrepresentations").

However, a more recent Ninth Circuit decision has not required the injury alleged to result from commercial decisions made in reliance on the government's misinformation. In *Lawrence v. United States*, a plaintiff sued the United States under the FTCA after she was sexually abused by her foster father, who was licensed by California's Department of Health and Welfare to be a foster parent, based on allegedly incomplete and inaccurate testimony regarding his criminal history provided by a United States Marshal and a United States Probation Officer. 340 F.3d at 954, 955, 958. This case therefore involved an injury resulting from the state's decision to license a foster parent, which was not a commercial decision. *See Kim v. United States*, No. 1:16-CV-01656-LJO-SKO, 2017 WL 5158709, at *7 (E.D. Cal. Nov. 7, 2017) (characterizing *Lawrence* as an "application of the misrepresentation exception in a case involving wholly non-commercial injuries"), *aff'd in part, rev'd in part and remanded*, 940 F.3d 484 (9th Cir. 2019); *see also Doe v. Holy See*, 557 F.3d 1066, 1085 n.10 (9th Cir. 2009) (citing to *Lawrence* as an example where the "failure to warn about an individual's dangerousness" came within the misrepresentation exception of the FTCA).

Recently, the Ninth Circuit directly addressed the claim that it had "limited the exception only to cases where the 'plaintiff is seeking to recover for economic loss suffered as a result of a commercial decision the plaintiff made in reliance on a government misrepresentation.'" *Kim v. United States*, 940 F.3d 484, 492–93 (9th Cir. 2019). The court responded that Ninth Circuit case law "impose[d] no such limitation[,]" and that while "the exception primarily applies to claims of economic loss flowing from commercial transactions," the relevant cases "do not hold that the exception cannot apply in other contexts." *Id.* (citations omitted). In support of this point, the Ninth Circuit noted that the exception has been applied "to claims of personal injury resulting from non-fraudulent failures to warn." *Id.* at 493 (citing to *Holy See* and *Lawrence*). Thus, while the holding in *Kim* still applied the misrepresentation exception in a commercial setting,[1] the decision

---

[1] In *Kim*, two families sued under the FTCA for wrongful death and negligent infliction of emotional distress after a tree limb fell on the tent where their two sons were sleeping in Yosemite National Park. *Id.*

- 7 -

expressly approved of *Lawrence* and therefore the general principle that the misrepresentation exception is not limited to economic loss or commercial decisions. This Court cannot ignore the Ninth Circuit's statements regarding the scope of the law, even when made in dicta. *See Enying Li v. Holder*, 738 F.3d 1160, 1164 n.2 (9th Cir. 2013) ("Well-reasoned dicta is the law of the circuit.") (citing *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (*en banc*)); *Bank of Manhattan, N.A. v. F.D.I.C.*, 778 F.3d 1133, 136 n.3 (9th Cir. 2015).

Here, Plaintiffs allege that their injuries arose from the decision to arrest Ms. Andrade based upon false information provided by employees of San Ysidro Health. The decision to arrest Ms. Andrade, like the decision to license a foster parent in *Lawrence*, cannot be fairly characterized as a commercial decision or a decision made in a commercial context. However, after review of the relevant case law in this circuit, the Court concludes that the misrepresentation exception under § 2680(h) is not limited to commercial contexts. Thus, the non-commercial nature of the decision leading to Plaintiffs' injuries also does not remove this case from the scope of § 2680(h).

## IV. CONCLUSION AND ORDER

Because the misrepresentation exception to the FTCA covers claims arising from misinformation relied upon by third parties and misinformation conveyed in non-commercial contexts, the Court concludes that Plaintiffs' claim falls within the intended scope of § 2680(h). Accordingly, the Court **GRANTS** the Government's Motion for Judgment on the Pleadings (ECF No. 18) and **DISMISSES WITHOUT PREJUDICE** the FAC for lack of subject-matter jurisdiction. The Clerk is ordered to close the case.

**IT IS SO ORDERED.**

**DATED: February 20, 2020**

Hon. Cynthia Bashant
United States District Judge

---

at 486. The families alleged that National Park Service officials "fraudulently concealed information about the danger posed by the tree so that campers would continue to patronize the campground" and NPS could "continue charging camping fees to visitors." *Id.* at 487, 492 (internal quotations omitted). Thus, the court still found that the misrepresentation exception applied because plaintiffs "detrimentally relied on the government's fraudulent misrepresentation in a *commercial* transaction." *Id.* at 493−94 (emphasis added).